Peter M. LEDDA, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: May 31, 1989.
Decided: Sept. 11, 1989.

James E. Liguori, Hudson, Jones, Jaywork, Williams & Liguori, Dover, for appellant.

Mark W. Bunitsky, Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before CHRISTIE, C.J., MOORE and WALSH, JJ.

WALSH, Justice:

The defendant-appellant, Peter M. Ledda ("Ledda"), was convicted of Trafficking in Cocaine, Possession with Intent to Deliver a Narcotic Schedule II Controlled Substance, Possession of a Non–Narcotic Schedule I Controlled Substance, Conspiracy Second Degree, and Maintaining a Vehicle for Keeping Controlled Substances, after a bench trial in the Superior Court. The evidence resulting in Ledda's convictions was discovered during a traffic stop of Ledda's vehicle, which was being operated by Jeffrey Morzella ("Morzella"). The police officer requested and secured Morzella's consent to a search of the vehicle. A bag of marijuana was found in the glove compartment and a brick of cocaine, two plastic bags containing cocaine and a bag containing money were found in suitcases in the trunk of the vehicle. In this appeal, Ledda contends that the trial judge should have suppressed the evidence seized from the vehicle because Morzella could not effectively consent to the search of a vehicle that he did not own. Ledda also claims that the judge erred in not suppressing statements that he made to police regarding the ownership of the suitcases found in the vehicle. We conclude that the Superior Court correctly denied the motions to suppress and accordingly affirm the convictions.

I

The facts are uncontroverted. On July 19, 1985, Morzella was driving on I–95 when stopped by the police for changing from the left hand lane into the center lane without using a turn signal. The vehicle was owned by Ledda, who was seated in the rear passenger seat. Two Delaware State policemen, Corporal Durnan ("Durnan") and Corporal Mergenthaler ("Mergenthaler"), approached the vehicle. Durnan approached the driver's side of the vehicle and requested that Morzella produce his driver's license and registration. Morzella handed Durnan his driver's license while Ledda obtained the registration from underneath the visor on the driver's side of the vehicle and tendered the registration directly to Durnan. The registration indicated that Ledda was the owner of the vehicle.

Durnan asked Morzella to accompany him to the police car for the purpose of receiving a reprimand for the lane change violation. In response to questioning by Durnan concerning the presence of weapons, untaxed cigarettes or fireworks in the vehicle, Morzella admitted having a machete in the trunk of the car. He thereafter signed a consent form allowing the officers to search the vehicle.

After obtaining Morzella's consent, Durnan requested that Morzella remain seated in the police vehicle while the vehicle was searched. Without speaking to Mergen-

thaler or advising Ledda or the other passenger, Anthony Marino ("Marino"), that he had secured Morzella's consent to search the vehicle, Durnan removed the keys from the ignition and proceeded to open the trunk. At no time did Ledda object to the search. Mergenthaler searched the glove compartment while Durnan searched the trunk. Durnan found a machete in plain view lying on top of three suitcases in the trunk. As Durnan began to search the suitcases, Mergenthaler held up a small bag that he had found in the glove compartment. The bag contained green plant material that was later identified as marijuana.

In his search of the trunk, Durnan found three suitcases. One contained a brick of white substance, which was later determined to be cocaine, another contained two clear plastic bags of cocaine, and a third bag contained a leather pouch with several twenty dollar bills inside. The ownership of the contents of the suitcases was not established at that time. Ledda, Morzella and Marino were immediately placed under arrest and given their *Miranda* warnings.

At the suppression hearing, Durnan testified that Ledda was not wearing shoes or a shirt when he was arrested. Because Durnan wanted Ledda to be properly clothed prior to arraignment, Durnan, at the police station, asked Ledda where his clothing was. Ledda identified the suitcase containing the brick of cocaine as his bag. When the officer produced sneakers and a shirt from the bag, Ledda put them on; Durnan noted this fact as further evidence connecting Ledda to the cocaine.

## II

### A.

The first issue for our consideration is whether a driver of a vehicle has authority to consent to a full search of the vehicle when the owner of the vehicle is present and does not object to the search. Ledda claims that the warrantless search of his vehicle and the suitcases in the trunk was a violation of his Fourth Amendment right to be free from unreasonable searches and seizures.

Ledda claims that Morzella's consent to search Ledda's vehicle was not valid, because Morzella's right to possession and control of the vehicle was not superior to Ledda's. Ledda bases his argument on the long accepted "possession and control rule," which governs the effectiveness of third-party consents. *Jenkins v. State*, Del.Supr., 230 A.2d 262 (1967), *aff'd*, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969). Since Morzella did not have a superior right to possession and control of the vehicle, the argument runs, Morzella could not bind Ledda by the consent that Morzella gave to the police to search the vehicle. Moreover, Ledda's superior right to control access to the vehicle, it is argued, was made known to the police officer, who had examined the vehicle's registration before requesting consent to the search.

The State counters that Morzella, as the driver of the vehicle, had the authority to consent to a search of the vehicle as a result of his immediate possession and control over the vehicle. *United States v. Morales*, 3d Cir., 861 F.2d 396 (1988). The State claims that the driver's dominion and control over the vehicle renders his right to possession of items in the vehicle superior to that of a mere passenger. *See, e.g., Holden v. State*, Del.Supr., 305 A.2d 320, 322 (1973) (custodian of automobile has dominion and control of contraband found in vehicle). Therefore, the driver may consent to a full search of all areas of the vehicle to which he has joint access and control, including the trunk and glove compartment. *United States v. Morales*, 861 F.2d at 401. Moreover, it is argued that Ledda, in permitting Morzella to operate the vehicle, implicitly authorized Morzella to control the vehicle and its contents and to consent to its search by third parties.

It is well settled law that a warrantless search may be justified by valid consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). Consent to a search must be voluntary and the person giving such consent must have the authority to do so. *United*

*States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974).

██ The Superior Court found that Morzella, as the driver of the vehicle, had immediate possession and control of the vehicle and that Ledda, the owner, was present when Morzella consented. Ledda did not countermand the consent, a fact which reinforces Morzella's degree of control and authority over the vehicle. Further, because Ledda never objected to the officers' searching of the vehicle pursuant to Morzella's consent, the trial court held that Ledda impliedly consented to the search through this silence. *See State v. Foster,* 33 N.C.App. 145, 234 S.E.2d 443, 446 (1977). We agree.

The State must prove by a preponderance of the evidence that the consent to search the vehicle is valid. *United States v. Matlock,* 415 U.S. at 171, 94 S.Ct. at 993. *Matlock* sets forth the standard for determining when a third party's consent will be valid:

> [T]hird party consent does not rest upon the law of property, ... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit inspection in his own right and that the others have assumed the risk that one of the number might permit the common area to be searched. *Id.* at 171 n. 7, 94 S.Ct. at 993 n. 7.

Under the *Matlock* test, third party authority to consent to a search is an essential element of a valid consent. *United States v. Morales,* 3rd Cir., 861 F.2d 396, 399 (1988). Such authority, in turn, must include both possession and equal or greater control, *vis-a-vis* the owner, over the area to be searched. *See State v. Passerin,* Del.Supr., 449 A.2d 192, 197 (1982) (citing *United States v. Matlock,* 415 U.S. at 171, 94 S.Ct. at 993). *See also Jenkins v. State,* Del.Supr., 230 A.2d 262 (1967),

*aff'd,* 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969), *reh'g denied,* 396 U.S. 995, 90 S.Ct. 469, 24 L.Ed.2d 460 (1969). The driver has general access to all areas of the vehicle, and therefore "has the requisite 'joint access and control' giving rise to the authority to consent to a full search of a vehicle." *United States v. Morales,* 861 F.2d at 399. "Because a driver has control over the entire vehicle, that driver may consent to a full search of the vehicle including its trunk, glove box and other components." *Id.* (citations omitted).

Morzella, as the driver, had immediate possession and control over Ledda's vehicle.[1] Even though Ledda was present, he failed to countermand Morzella's consent at any time during the search. Ledda's non-assertion of his ownership rights, even if deemed superior to Morzella's possessory rights, may be viewed as impliedly consensual. *United States v. Varona–Algos,* 5th Cir., 819 F.2d 81, 83 (1987), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 255 (1987); *see also United States v. Horton,* 5th Cir., 488 F.2d 374, 380 n. 6 (1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974); *State v. Foster,* 33 N.C.App. 145, 234 S.E.2d 443, 446 (1977).

Ledda argues that he did not have a duty to countermand Morzella's consent because his mere presence invalidated the driver's authorization. Ledda hinges his argument on the language of the *Matlock* court in enunciating the possession and control rule; "consent of one who possesses common authority over premises or effects is valid as against the *absent,* nonconsenting person ...," *United States v. Matlock,* 415 U.S. at 170, 94 S.Ct. at 992. Ledda claims the police purposely failed to request his consent, even though they knew that he possessed a superior privacy interest. While the validity of a third party consent is less certain when one with a superior privacy interest is present, *United States v. Impink,* 9th Cir., 728 F.2d 1228 (1984), the presence of such a person is not wholly determinative of whether or not the con-

---

**1.** There is no evidence in the record that Morzella's control of the vehicle was limited in any way, such as the lack of a key, or other means of access to the trunk or glove compartment.

We make no finding as to a driver's authority to consent if his control is limited in such a way. *See United States v. Morales,* 861 F.2d at 399 n. 7.

sent to search was valid. Although we do not condone the purposeful failure to question the owner of the vehicle, we find that Morzella had the authority to consent to the search of the vehicle, in the absence of any objection by Ledda, as a result of Morzella's immediate possession and control over the vehicle. *Pupo v. State*, 187 Ga. App. 765, 371 S.E.2d 219, 222 (1988).

### B.

■ Ledda further claims that if the oral and written consent to search the vehicle given by Morzella was valid, the search was beyond the scope of the consent extended. Morzella signed the standard Delaware State Police consent to search form authorizing a full search of the vehicle.[2] The consent form authorized the troopers to "conduct a complete and thorough search" of the vehicle. The scope of the search is governed by the language used in giving the consent. *United States v. Covello*, 7th Cir., 657 F.2d 151, 154 (1981). There is no evidence in the record showing that Morzella or Ledda revoked or limited the scope of the consent at any time or that Morzella lacked understanding of the language of the consent form. Accordingly, the scope of the search is as broad as the form indicates—a complete and thorough search of the vehicle.

### C.

■ Ledda next claims that the trial court erred in finding that, based upon Morzella's admission to the presence of a weapon in the vehicle, there was probable cause to search the entire vehicle for weapons. We agree with the trial court's holding that Morzella lacked the possession and control of his passengers' suitcases that would have given him the authority to consent to a search of them. *See United States v. Padron*, D.Del. 657 F.Supp. 840, 847 (1987), *aff'd, United States v. Rubio*, C.A.3, 857 F.2d 1466, *cert. denied*, —— U.S.

——, 109 S.Ct. 512, 102 L.Ed.2d 547 (1988). However, probable cause for a further search arose upon the valid finding of the machete and the marijuana. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982). The vehicle was lawfully stopped for a violation of 21 *Del.C.* § 4155. Upon learning of the concealed machete, the officers had probable cause to conduct a probing search of all compartments and containers within the vehicle, including the trunk, which may have concealed other weapons. *Id.* at 820–22, 102 S.Ct. at 2170–71. We agree with the trial court that it was reasonable for Durnan to believe that he might find additional weapons upon discovering the first machete. Moreover, because the other officer, Mergenthaler, found the marijuana before Durnan discovered the cocaine in the suitcases, probable cause was established to conduct a warrantless search of the vehicle under *Ross.*

### III

■ The final issue for our consideration is whether the trial judge erred in denying Ledda's motion to suppress the statement that he made at the police station. Ledda argues that *Miranda* warnings should have been readministered before Durnan conversed with him. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*Miranda* warnings were administered at the time of arrest at the scene of the vehicle stop. Ledda was not interrogated and he did not volunteer any statement. All three suspects were transported to the State Police barracks, a trip requiring approximately ten minutes. Within fifteen minutes to an hour after arriving at the

---

2. The form stated in pertinent part:

HAVING BEEN ADVISED OF THESE RIGHTS (to refuse search and that any evidence seized as result of search will be used in court) AND KNOWING THE SIGNIFICANCE OF THEM, I DO HEREBY WAIVE THESE RIGHTS AND AUTHORIZE CPL. MERGENTHALER AND CPL. DURNAN OF THE DELAWARE STATE POLICE TO CONDUCT A COMPLETE AND THOROUGH SEARCH OF:

... 1978 Chev. Monte Carlo CT Reg 929Dov

barracks, Durnan, believing that Ledda should be properly dressed for his court appearance, asked Ledda about his clothing, without readministering *Miranda* warnings. Ledda told Durnan that he had sneakers and a shirt, which he described, in one of the bags. Durnan retrieved the articles from the bag where the brick of cocaine had been found and Ledda put on the shirt and sneakers.

Several factors must be considered when determining whether *Miranda* warnings, once given, must be readministered, including the time lapse since prior warnings, change of location, interruptions in interrogation, whether the same officer who gave the warning also interrogated, and significant differences of statements. *Commonwealth v. Wideman*, 460 Pa. 699, 334 A.2d 594 (1975). The trial judge found that the only factor arguably in Ledda's favor was the lapse of time between the administering of *Miranda* warnings and the discussion concerning clothing at the barracks. Time lapses greater than or equal to the delay involved in this case have been held not to require readministering of *Miranda* warnings. *Comm. of Pa. v. Smith*, 255 Pa.Super. 403, 387 A.2d 491 (1978) (7 hours); *Smith v. State*, 20 Md.App. 577, 318 A.2d 568 (1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 839 *reh'g denied*, 420 U.S. 984, 95 S.Ct. 1416, 43 L.Ed.2d 666 (1975) (4 and ½ hours); *State v. Ruybal*, Me.Supr., 398 A.2d 407 (1979) (4 hours).

The length of time between the *Miranda* warning and Ledda's statement was less than two hours, including a change in location from the traffic stop to the police station. Officer Durnan both gave the warning and questioned Ledda. There had been no interrogation prior to Ledda's claiming his clothing at the barracks and there was no interruption in the questioning. We agree with the Superior Court that, under these circumstances, there was no need to readminister *Miranda* warnings at the station prior to questioning. Therefore, the statements made by Ledda are admissible.

IV

In sum, we affirm the Superior Court's ruling on the admissibility of the evidence seized and statements made and affirm all of Ledda's convictions.