A90A0075. GARCIA v. THE STATE.
(394 SE2d 542)

BIRDSONG, Judge.

Appellant, Mario Roberto Garcia, appeals his sentence and judgment of conviction for violation of the Georgia Controlled Substances Act by trafficking in cocaine.

Appellant came under the observation of DeKalb County Police Detective Terry Toles as he and other passengers were entering Atlanta International Airport from a plane which had just arrived from Fort Lauderdale, Florida. Toles, a member of a federal task force assigned to interdict drug trafficking at the airport, was monitoring the arrival of the passengers on this flight because he considered Fort Lauderdale to be a "major drug source city." He testified he stood next to appellant as the latter approached an airline gate agent, overheard him ask, in English, for directions to a connecting flight to Tulsa, Oklahoma, and observed that the name, "Garcia" was written on his boarding pass. Toles then determined from an examination of the airline's computer records that there was only one passenger on

the flight with a connecting reservation to Tulsa and that he was identified as Mario Garcia. Toles further observed that the reservation in question was one way only, that it had been made shortly before the flight's departure from Fort Lauderdale, and that the ticket had been paid for with cash.

Believing these latter factors to be characteristics of drug courier activity, Toles decided to confront appellant and thus proceeded, in the company of another officer, to the gate from which the connecting flight to Tulsa was scheduled to depart. Upon locating appellant, Toles identified himself as a police officer, asked appellant if he could speak with him and, after receiving an affirmative response, asked if appellant spoke English. Appellant replied, "Yes, I do," and at Toles' request, handed over his airline ticket and driver's license. Toles inspected and returned the documents to appellant after observing that both documents bore the name, Mario Garcia. Having further observed that there was a baggage claim stub attached to the ticket envelope, Toles then asked appellant if he would "mind cooperating and allow us to search you and your bag." Toles stated that although appellant "was now visibly shaken as evidenced by his hands quivering and his stomach quivering," he responded, "Yes, that's fine."

Toles left the concourse at this time to find appellant's bag, assuring him that he "was not under arrest" and was free to "do whatever he wanted there in the airport or wherever," but also instructing the other officer to "keep an eye on" him. Upon returning with the bag, Toles asked appellant if it was his. Appellant replied in the affirmative and, in response to further inquiry by Toles, elected to have the search conducted "in private" rather than there in the concourse. Appellant accompanied the two officers to a nearby airline office, where he produced a key to the bag at their request. The ensuing search of the bag resulted in the discovery of approximately 3,500 grams of 84-percent pure cocaine. Appellant admitted that he had been paid $2,000 to take the bag to Tulsa from Fort Lauderdale but testified he had been told it contained marijuana and had not realized it contained cocaine until it was opened by the officers. *Held*:

1. "[T]he State has the burden of proving that the necessary consent was . . . freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U. S. 491, 497 (103 SC 1319, 75 LE2d 229).

The evidence of the suppression hearing and of the trial shows that the defendant consented to the search of his luggage after the law enforcement official had tendered proper identification, and that appellant subsequently elected to have the search done in a private room in the airport.

In denying the suppression motion, the trial court found as a fact that appellant affirmatively responded to the question of whether he

would allow a search of his bag; the trial court also found that appellant "did understand English, at least to the extent that he knew what he was doing and what was going on and participated in the conversation at the airport." Compare *Pupo v. State*, 187 Ga. App. 765, 767 (4) (371 SE2d 219) (Pupo responded in the affirmative without revealing any language difficulties).

Moreover, inherent in the trial court's findings supporting denial of the suppression motion is the finding that appellant's consent to search was made voluntarily.

A trial court's decision of questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous. *Santone v. State*, 187 Ga. App. 789, 790 (371 SE2d 428). Examination of the record in toto reveals no basis for reversal of the trial court's findings of fact. Additionally, we are satisfied that the State met its burden as required by *Florida v. Royer*, supra, albeit barely, of establishing that appellant's consent was freely and voluntarily given.

Appellant adequately understood English; the conversation with the law enforcement officer was conducted in normal voice tone and in an open manner; appellant made no attempt to terminate the conversation or to leave; no coercion or threats were made to appellant; weapons were not displayed; although apparently kept under surveillance, appellant was expressly informed that he was not under arrest and that he was free to leave; and after consenting to the search, appellant subsequently elected to have the search done in private.

Voluntariness of consent must be determined from all the circumstances (*Lombardo v. State*, 187 Ga. App. 440 (1) (370 SE2d 503)), and where a valid consent to search exists, the need either for probable cause or a search warrant is eliminated. Id. Applying the applicable law to the facts before us, we find that the record reveals no basis therein for reversal of the trial court's rulings. The State met its burden of establishing that appellant's consent was freely and voluntarily given.

2. Appellant asserts that his conviction was against the weight of the evidence and contrary to law, as there was absolutely no evidence that appellant knowingly brought into this State cocaine or that he knowingly was in possession of cocaine.

Knowledge and possession can be proven by circumstantial evidence. To support the verdict circumstantial evidence must only exclude reasonable hypotheses; it need not exclude every inference or hypothesis except that of defendant's guilt. *Smith v. State*, 257 Ga. 381, 382 (359 SE2d 662). Viewing the evidence of this case in a light most favorable to the verdict, we conclude that the jury rationally could have found that it excluded every reasonable hypothesis except that of the defendant's guilt. Review of the transcript reveals ample evidence from which any rational trier of fact could have found be-

yond a reasonable doubt that appellant was guilty of the offense of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

Appellant's other assertions are without merit.

*Judgment affirmed. Carley, C. J., Deen, P. J., McMurray, P. J., Sognier, Pope and Beasley, JJ., concur. Banke, P. J., and Cooper, J., dissent.*

BANKE, Presiding Judge, dissenting.

"[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was . . . freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U. S. 491, 497 (103 SC 1319, 75 LE2d 229) (1973).

I must reluctantly conclude that this burden was not met in the present case. While the State's evidence establishes that the appellant offered no resistance to the officers, made no effort to terminate their discussion with him, and responded in the affirmative when asked to consent to the search of his luggage, there is no evidence which would suggest that he knew or believed he was free to do otherwise. Moreover, the State's evidence also shows that the appellant was so nervous by the time he gave his consent that his hands and stomach were shaking visibly. Although such behavior no doubt implied that he had something to hide, it also implied rather strongly that he believed he had no practical alternative but to cooperate with the officers.

" ' "Courts indulge every reasonable presumption against waiver" of fundamental constitutional rights.' Coercion is implicit in situations where consent is obtained under color of the badge, and the government must show that there was no coercion in fact. *United States v. Page*, 302 F2d 81, 83-84 (9th Cir. 1962) (footnotes omitted)." *Shaibu v. United States*, ___ F2d ___ (9th Cir. 1990). Accord *Code v. State*, 234 Ga. 90, 93 (214 SE2d 873) (1975).

Where the issue would otherwise be in doubt, evidence that an accused was informed of his right to refuse to give his consent will often "assuage the fear of a court that [he] was intimidated into [doing so]. . . ." *United States v. Berry*, 670 F2d 583, 598 (5th Cir. 1982). Unfortunately, there is no such evidence in the present case. Toles conceded that he never advised the appellant of his right to refuse to permit the search, even though he was carrying in his wallet a "consent to search" card containing the following admonitions to be read under precisely such circumstances: "You have the right to allow or refuse to allow a search to be made of your person and personal property that you have with you. You have the right to consult with an attorney before deciding whether you wish to allow or refuse to allow the searches. If you consent to the searches, any illegal objects

found can be used against you in court proceedings. Do you understand?"

There is, of course, no absolute requirement that a suspect be given such advice before being asked to consent to a search. "The test is merely a question of voluntariness under the totality of the circumstances." *Code v. State*, supra, 234 Ga. at 95, fn. 1. Accord *Woodruff v. State*, 233 Ga. 840, 844 (3) (213 SE2d 689) (1975). However, where consent searches have been upheld in the absence of such advice, there have normally been other circumstances indicative of voluntariness on the defendant's part. See, e.g., *Castro v. State*, 186 Ga. App. 248 (1) (367 SE2d 42) (1988) (where defendant acknowledged in open court that he had given his consent freely and voluntarily); *Noland v. State*, 178 Ga. App. 486 (343 SE2d 763) (1986) (where idea for search originated with defendant). Because no such circumstances were shown in the present case, I would hold that the trial court erred in denying the appellant's motion to suppress. Accord *Miranda v. State*, 189 Ga. App. 218 (375 SE2d 295) (1988).

I am authorized to state that Judge Cooper joins in this dissent.

DECIDED APRIL 19, 1990 —
REHEARING DENIED MAY 15, 1990 — ■

*Maloy & Jenkins, W. Bruce Maloy*, for appellant.
*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney*, for appellee.