A94A2151. HESTLEY v. THE STATE.
(455 SE2d 333)

BIRDSONG, Presiding Judge.

Michael David Hestley appeals from his judgment of conviction of burglary, theft by taking, and entering an automobile; his co-defendant was acquitted of all charges in the joint trial. Appellant enumerates five errors. *Held:*

1. Appellant's assertion that the trial court erred in denying his motion to suppress is without merit. The trial court entered detailed findings of fact and concluded that the initial investigative stop of appellant was lawful, and that a valid consent to search the vehicle was thereafter obtained. In considering the legality of a search, this court can consider all relevant evidence of record, including that adduced at both the trial and at the suppression hearing. *Jones v. State,* 187 Ga. App. 421, 422-423 (370 SE2d 784). Determinations of credibility and fact made by a trial judge after a suppression hearing are accepted by appellate courts unless clearly erroneous. *Baldwin v. State,* 263 Ga. 524, 525 (435 SE2d 926). Although the officer who initially detained appellant's vehicle did not testify, there exists enough

evidence of record to establish that the findings made by the trial court were not clearly erroneous.

It had been reported to the sheriff's office that an unidentified white van had been involved in some burglaries; the reporting witnesses believed the van might be a Chevrolet but they were not positive. It was also reported that the van was a panel van that did not have a lot of windows, and that it was not a luxury van. Further, photographs of appellant's van, introduced in evidence, reveal that it was a white panel van without a lot of windows; the van was a Chevrolet. The detaining officer was aware that a "lookout" had been placed on the white van. On July 10, 1991, the Butts County Road Department had a crew working on county roads; they noticed a white van riding back and forth on Rising Star Church Road and Old Bethel Road. One of the family members of the superintendent of the road department had been the victim of a lawn mower theft and a white van had been seen leaving his residence. The road department crew became suspicious because the van "just kept riding back and forth like it was possibly casing the place out or something of that nature." A member of the road department called the sheriff's office and reported their suspicions. This report is tantamount to the report of a concerned citizen. A concerned citizen has always been given a preferred status regarding the testing of the credibility of his reported information. *Cichetti v. State*, 181 Ga. App. 272, 273 (1) (351 SE2d 707). After receiving this call, the detaining officer and the police chief started a search for the van. Shortly after 4:00 p.m., the detaining officer found and stopped the van at the intersection of Rising Star Church Road and Old Bethel Road. The detaining officer reported by radio to the police chief that he "was making a traffic stop on the white van that [the police] had been getting a lookout on at Rising Star Church Road at its intersection with Old Bethel."

The evidence of record supports the conclusion of the trial court that reasonable suspicion existed for the stopping of the vehicle. *Vansant v. State*, 264 Ga. 319 (443 SE2d 474) clearly is distinguishable. In *Vansant*, according to the facts relied upon by the majority, the only relevant information known about the van was that it was white and driven by a white male; thereafter, a white van was stopped approximately one mile from the crime scene. In this case, a white panel van that "didn't have a lot of windows," and believed to be a Chevrolet, was reported as being involved in prior burglaries. A concerned citizen's report was received to the effect that a white van was driving suspiciously back and forth on an identified road area as though casing out a residence. Shortly thereafter, appellant's van, a white panel Chevrolet van, was found in the same general vicinity as that reported telephonically in the concerned citizen's report. The detaining officer was aware of the lookout on the van and of the concerned citizen's

report. Information transmitted by the police to one another, by any acceptable means of communication, can provide sufficient grounds to create an articulable suspicion to justify an automobile stop. *Walton v. State*, 194 Ga. App. 490, 491 (2) (390 SE2d 896). We conclude there exists sufficient evidence of record to support a finding that the detaining officer had an articulable, reasonable suspicion for the stop (see generally *State v. Fowler*, 215 Ga. App. 524 (451 SE2d 124)); clearly this stop was neither arbitrary nor harassing. Compare *Smith v. State*, 182 Ga. App. 58 (354 SE2d 681) (physical precedent only) where the degree of suspicion was far less than shown in the case at bar.

Regarding appellant's subsequent consent to search, the State has the burden of proving that the necessary consent was freely and voluntarily given, a burden that is not satisfied by showing mere submission to authority. *Garcia v. State*, 195 Ga. App. 635, 636 (1) (394 SE2d 542). Inherent in the trial court's findings supporting denial of the suppression motion is the finding that appellant's consent to search was made voluntarily. Id. at 637 (1). Voluntariness of consent must be determined from all the circumstances, and where a valid consent to search exists, the need either for probable cause or a search warrant is eliminated. Id. Appellant's contention that consent was tainted by an illegal stop is without merit. As the initial stop was lawful, his subsequent consent was not tainted by any form of illegal arrest. Compare *Mallarino v. State*, 190 Ga. App. 398, 402 (2) (379 SE2d 210). Considering the totality of the circumstances, we find that the trial court's findings were not clearly erroneous and that the resulting search and seizure were lawful.

2. Appellant asserts the trial court erred in admitting, over objection, testimony of a sheriff's department's burglary investigator, as to whether, based on his training and experience, items are sometimes sold when they are stolen and whether the crime lab would process fingerprints taken from a burglary crime scene.

As to the first question, the sole ground for objection at trial was that the answer called for a conclusion of the witness. Examining the content of the witness' testimony in its entirety, it appears that the trial court tacitly accepted the witness as a qualified expert in the field of burglary investigation. The witness expressed his conclusion, as to whether stolen property is sometimes sold, based on his knowledge and experience. "The opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." OCGA § 24-9-67; see generally *Loper v. Drury*, 211 Ga. App. 478, 481 (1) (b) (440 SE2d 32). The trial court did not err in overruling the objection on the limited grounds appellant asserted at trial. Further, as a general rule, an objection on a specific ground at trial

waives, on appeal, any objection to that evidence on other grounds. *Norman v. State*, 197 Ga. App. 333, 334 (2) (398 SE2d 395). Assuming arguendo, the investigator merely was testifying as a lay witness, he still could express his opinion so long as he testified to sufficient facts to form the basis thereof. *O'Kelley v. State*, 175 Ga. App. 503 (3) (333 SE2d 838). The record adequately reflects that the investigator's opinion was based on his personal observations during burglary investigations and by reasons of his training and experience. *Norman*, supra.

As to the second question, the sole ground for objection asserted at trial was lack of relevancy. Accordingly, on appeal, all other grounds are waived. "Admissibility of evidence is a matter which rests largely within the discretion of the trial court." *Norman v. State*, supra at 336 (4). " 'Unless the potential for prejudice in the admission of evidence substantially outweighs its probative value, the Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value. Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors. Where evidence is offered and objected to, if it is competent for any purpose, it is not erroneous to admit it.' (Citations and punctuation omitted.)" Id. In the absence of abuse of discretion, we will not reverse when a trial court overrules a relevancy objection and allows the admission of evidence. Appellant has failed to establish that the trial court abused its discretion in this instance.

Assuming arguendo the trial court had erred in overruling both of appellant's specific objections, we are satisfied that any such errors would have been harmless under the "high probability" test of *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869).

3. In his third enumeration of error, appellant contends the trial court erred in allowing the burglary investigator to testify on rebuttal over appellant's objection thereto. Appellant, by way of his appellate brief and enumeration of error, cites this court to pages 79 and 80 of the trial transcript. The trial transcript at those pages shows that two objections were posed by the prosecuting attorney as to questions asked by appellant's attorney and that the trial court sustained both objections. Whether the trial court erred in sustaining those objections is beyond the scope of appellant's enumeration of error and fails to preserve these particular issues for appellate review. See *Krebsbach v. State*, 209 Ga. App. 474, 475 (2) (433 SE2d 649).

Appellant contends that rebuttal testimony is only appropriate to refute or explain testimony introduced by the defendant. Assuming arguendo that the admitted testimony constituted new evidence, nevertheless, " '[r]eopening evidence is in the sound discretion of the trial court and will not be disturbed when no abuse of discretion is shown.' " *Brown v. State*, 210 Ga. App. 59, 60 (2) (435 SE2d 274);

accord *Sharp v. State*, 203 Ga. App. 475, 476 (2) (416 SE2d 901).

Appellant now asserts that the trial court's ruling was erroneous in light of *Culpepper v. State*, 132 Ga. App. 733 (209 SE2d 18), which in essence held an accused cannot be deemed to have waived his Fifth Amendment privilege against self-incrimination merely because he testified at a suppression hearing in an attempt to protect his Fourth Amendment rights, and thus concluded " 'that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.' " Id. at 734 (3). When the witness was called in rebuttal, appellant's counsel initially stated: "Now, Your Honor, I object to this line of questioning. That motion has been determined by this court. It was not the subject of the defense that we put forth, and I don't think it's proper for the rebuttal to be — to embrace an area that we haven't covered yet." This colloquy is tantamount either to a general objection or to an objection that the proposed testimony was beyond the scope of legitimate rebuttal; under either interpretation, it did not constitute a specific objection to the infringement of appellant's self-incrimination privilege and therefore did not preserve a Fifth Amendment appellate issue, based on our holding in *Culpepper*, supra. See *Norman*, supra at 334 (2). There being no constitutional issue raised below and ruled upon, such issue therefore is not preserved on appeal. *Meders v. State*, 260 Ga. 49, 54 (2) (b) (389 SE2d 320); *Whatley v. State*, 196 Ga. App. 73, 75 (1) (395 SE2d 582). Appellant's second objection merely was based on a claim that the testimony did not constitute a prior consistent statement made by appellant; it likewise failed to raise adequately and preserve for appellate review a claim of a violation of appellant's Fifth Amendment privilege against self-incrimination. *Meders*, supra; *Whatley*, supra. Appellant's third enumeration, as crafted, is without merit.

4. Appellant's claim that the trial court erred in its charge to the jury by stating that appellant had the burden to explain his possession of recently stolen property is without merit. The trial court charged that a finding of recent possession of stolen property by appellant "places upon him the duty of going forward with evidence to explain his possession, keeping in mind that the burden of proof never shifts in a criminal case and the ultimate burden of persuading the jury of the guilt of the defendant beyond a reasonable doubt is always upon the State." The possession of recently stolen goods, unaccounted for, raises an inference that the possessor is the one who stole the goods, and if the accused does not want this inference to arise in his case, he must account for that possession. A defendant may be convicted for theft with neither direct proof nor circumstantial evidence, aside from this inference, that he committed the theft.

The reasonableness of the explanation is a jury question. *Buchannon v. State*, 199 Ga. App. 609, 610 (405 SE2d 583). Viewing the charge in its totality, we find no error.

5. The trial court denied appellant's motion for directed verdict of acquittal, which was based on a claim of insufficiency of the evidence. The correct standard of review of such a motion is the beyond a reasonable doubt standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). *Williams v. State*, 199 Ga. App. 566, 567 (1) (405 SE2d 716). Review of the transcript in a light most favorable to the jury's verdict reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the offenses of which convicted. *Jackson v. Virginia*, supra. The trial court did not err as enumerated. *Watkins v. State*, 212 Ga. App. 296, 298 (4) (441 SE2d 801).

*Judgment affirmed. Beasley, C. J., McMurray, P. J., Pope, P. J., Andrews, Johnson and Smith, JJ., concur. Blackburn and Ruffin, JJ., dissent.*

BLACKBURN, Judge, dissenting.

I must respectfully dissent to Division 1 of the majority's opinion.

I do not believe that the majority has appropriately applied controlling appellate precedent to the undisputed facts of the case. The warrantless stop of the white Chevrolet van driven by Hestley was not authorized under the controlling precedent. At the time of the stop, Hestley was lawfully proceeding down Rising Star Road in the white van and was not committing any traffic violations. There was nothing to identify Hestley's vehicle as the one seen in the area of the prior thefts or as the vehicle seen by members of the road crew suspiciously driving up and down Rising Star Church and Old Bethel Roads. More importantly, there was no evidence linking Hestley's vehicle to any criminal activity prior to the unjustified, illegal intrusion.

The undisputed facts of this case are controlled by the Supreme Court's recent decision in *Vansant v. State*, 264 Ga. 319 (443 SE2d 474) (1994). In *Vansant*, the Supreme Court held that the detaining officer lacked the requisite particularized basis for stopping the driver of a white van involved therein. The officer had received, via a police radio broadcast, information supplied by an eyewitness that the obviously intoxicated driver of a white van had been involved in a hit-and-run accident, and the driver had been identified by name, although the driver's identity was not a factor in the stop. The detaining officer in *Vansant* did not observe any traffic violations or damage to the vehicle prior to the stop.

As in *Vansant*, the detaining officer in the case at bar did not observe any traffic violations prior to the stop and did not have the requisite particularized basis for suspecting that the driver of this

particular white van was involved in criminal activity. Id. "Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The U. S. Supreme Court recognized the difficulty in defining the elusive concept of what cause is sufficient to authorize police to stop a person, and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. This demand for specificity in the information upon which police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence." (Citations and punctuation omitted.) Id. at 320 (2).

It is clear from the record that the only reason that Deputy Provence stopped Hestley was because he was driving a white van and there had been a police lookout sounded for a white van. Any white van would have been stopped. As there was no particularized and objective basis for stopping Hestley, he was illegally detained.

This court's recent decision in *State v. Fowler*, 215 Ga. App. 524 (451 SE2d 124) (1994), authored by this writer but relied upon by the majority, supports the suppression of the evidence seized following the warrantless stop. In *Fowler*, we affirmed the trial court's grant of the defendant's motion to suppress based upon the detaining officer's lack of a reasonable, articulable suspicion that the defendant had been involved in illegal activity prior to the warrantless stop. As in the present case, in *Fowler*, there was no factual basis that the defendant had been involved in illegal activity and the officer's conclusion that the defendant had been involved in illegal activity was not based on anything specific that the officer observed prior to the stop. In addition, our decision in *Smith v. State*, 182 Ga. App. 58 (354 SE2d 681) (1987), also relied upon by majority, is physical precedent only and not binding authority.

As to the consent to search, there was no significant lapse of time between the unlawful detention and Hestley's consent to search the van, and no intervening circumstances to dissipate the effect of the unlawful detention. Therefore, we must also hold that the consent was the product of the illegal detention and that the taint of the illegal detention was not sufficiently attenuated.

"[I]n order to eliminate any taint from an involuntary seizure or arrest, there must be proof both that the consent was voluntary and that it was not the product of the illegal detention. Proof of a voluntary consent alone is not sufficient. The relevant factors include the temporal proximity of an illegal seizure and consent, intervening circumstances, and the purpose and flagrancy of the official misconduct.

"In [Hestley's case], we find that there was no significant lapse of time between the unlawful detention and the consent, that no intervening circumstances dissipated the effect of the unlawful detention and that the deputy's conduct had no arguable legal basis. Therefore, we hold that the consent was the product of the illegal detention, and that the taint of the unreasonable stop was not sufficiently attenuated." (Citations and punctuation omitted.) *Brown v. State*, 188 Ga. App. 184, 187 (372 SE2d 514) (1988). "The stop of [Hestley] was unauthorized and therefore the consent obtained for the search of the van was tainted and did not validate the search. [Cit.]" *McKinley v. State*, 213 Ga. App. 738, 740 (445 SE2d 828) (1994).

Inasmuch as the stop was unauthorized, it follows that neither the evidence obtained from the ensuing search nor the arrest could form a proper basis for the issuance of the search warrant which was ultimately obtained and, the execution of which produced the victim's hunting knife. The good-faith exception to the exclusionary rule recognized by the U. S. Supreme Court is not applicable in Georgia in light of the legislatively-mandated exclusionary rule contained in OCGA § 17-5-30. See *Gary v. State*, 262 Ga. 573 (422 SE2d 426) (1992). Accordingly, I would reverse the ruling of the trial court and grant Hestley's motion to suppress.

I fully concur with the majority in the holdings in Divisions 2, 3, 4 and 5.

I am authorized to state that Judge Ruffin joins in this dissent.

DECIDED MARCH 9, 1995.

*Ballard & Ballard, H. Geoffrey Slade,* for appellant.
*Johnnie L. Caldwell, Jr., District Attorney, William T. Mc-Broom III, Assistant District Attorney,* for appellee.